1  Mark V. Boennighausen/Bar No. 142147
   mboennighausen@thoits.com
2  Dinah Ortiz/Bar No. 273556
   dortiz@thoits.com
3  Melissa Zonne/Bar No. 301581
   mzonne@thoits.com
4  **THOITS LAW**
   A Professional Corporation
5  400 Main Street, Suite 205
   Los Altos, California 94022
6  Telephone:  (650) 327-4200
   Facsimile:  (650) 325-5572
7
   Attorneys for Non-Party
8  Three Bell Capital

9

10                **UNITED STATES DISTRICT COURT**

11        **NORTHERN DISTRICT OF CALIFORNIA - SAN JOSE DIVISION**

12

13  **In Re: Three Bell Capital Document Subpoena**          Case No.  5:22-mc-80338-NC

14  Served in related cases:                                  **DECLARATION OF JEREMY HANIKA IN SUPPORT OF NON-PARTY THREE**
15  *In re Infinity Capital Management, Inc., U.S.*          **BELL CAPITAL'S REPLY IN SUPPORT OF MOTION TO QUASH HASELECT-**
    *Bankruptcy Court, District of Nevada Case*             **MEDICAL RECEIVABLES LITIGATION**
16  *No. 21-14486-abl*                                       **FINANCE FUND INTERNATIONAL SP'S**
17                                                           **SUBPOENA TO PRODUCE DOCUMENTS**
    *and adversary proceeding*
18                                                           Hearing Date: January 11, 2023
    *HASelect-Medical Receivables Litigation*               Time:            11:30 a.m.
19  *Finance Fund International SP v.*                        Judge:           Nathanael M. Cousins
    *Tecumseh-Infinity Medical Receivables*
20  *Fund, LP, Adv. Proc. No. 21-01167-abl*

21

22          I, Jeremy Hanika, declare:

23          1.      I am over eighteen (18) years of age and, if called upon to do so, I could and

24  would competently testify to the truth and accuracy of the facts set forth below.

25          2.      I am an independent consultant providing eDiscovery services to Thoits Law.

26          3.      I am licensed attorney and a member in good standing with the California

27  State Bar.

28

                                        1
   ─────────────────────────────────────────────────────────────────
   DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

THOITS LAW
A PROFESIONAL CORPORATION

4.      As an eDiscovery specialist, I have over 15,000 hours of experience providing eDiscovery project management services for various Am Law 100 firms (including Kirkland Ellis, Sidley Austin, Morrison Foerster and Baker Botts). Additionally, I have over 10,000 hours of experience in managing electronically stored information (ESI) for litigation purposes, including document collection, processing, and production working on behalf of various litigation support agencies including Epiq Global, HC2 Inc., RH Legal, and through my private consulting services, Hanika Legal.

5.      In my work, law firms often hire me to work with their clients to respond to document discovery requests and manage the review and production of documents in response to discovery.

6.      Since 2009, I have worked on over 150 complex civil litigation cases, including numerous investigations by the Security Exchange Commission, California Attorney General, and various internal investigations by financial firms, during which time I have conducted over a hundred document collections from client resources and completed several hundred document productions.

7.      I have personal knowledge of the following facts due to my direct personal involvement in them. In preparing this declaration, I have reviewed both the motion to quash and the opposition, as well as the non-party document subpoena at issue in this motion.

8.      I have been asked to provide a good faith estimate of the cost associated with the collection of documents from Three Bell Capital ("Three Bell") in the above captioned case.  The hourly rates and time estimates provided below are based on my experience, including document collection and review work I've conducted over the past year in the Bay Area.

9.      Three Bell is an investment advisory firm consisting of 18 employees who provide confidential advice to their clients and in doing so create confidential financial materials belonging to its clients. In reviewing the document subpoena at issue in this case, based on my experience, these document requests are incredibly broad in scope seeking basically every potential document, whether in electronic or paper form, over a four year

2

DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

1    period covering 19 categories.  As one example as to the scope, attached as Exhibit "A" is

2    the actual written request for category No. 1, when all of the definitions and time period is

3    included.  Given the incredibly broad scope of the requests and the lack of any real limiting

4    definitions, the process and cost estimate in response to this document subpoena, including

5    the collection, processing, storage, and production of documents required are detailed below

6    with reasonable cost estimates:

7         10.   **Identification of Information Sources.** The requests propounded by

8    HASelect upon Three Bell would require an inventory of all company and personal devices

9    that were used by any employee of Three Bell during the relevant time period to conduct

10   company business. For each employee (custodian), an inventory of each application used on

11   each laptop, tablet, and smartphone to conduct company business during the relevant time

12   period would need to be completed. These devices would each have access to company email

13   accounts, personal email accounts, cloud-based applications, and local, shared, and external

14   hard drives. Each device will have several applications used to process company information

15   including audio, text, and image messaging, social media, and whiteboard applications. A

16   reasonable estimate to complete a collection for multiple applications across two to three

17   devices for each of the 18 custodians would require approximately 30 to 60 minutes per

18   device and 9 to 18 hours to complete.

19        11.   **Collection of Email Information.** With the average email user sending and

20   receiving 160 emails per day (a larger estimate would be expected for a financial firm like

21   Three Bell) the average email account will accrue over 40,000 emails per year. Over a four-

22   year period, a company of 18 email users would transmit more than 3 million emails. With an

23   average email size of 75 kb, a company of 18 employees would send approximately 224.6

24   GB of email data over a four year period. A collection of 224.6 GB would require 2-3 hours

25   of consulting time to transfer on site (or up to 5-6 hours to transfer via the cloud at an

26   average fixed broadband rate of 28.5 mbps) at an average hourly rate of $250 to $400 per

27   hour.

28

**THOITS LAW**
A PROFESIONAL CORPORATION

3

DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

DocuSign Envelope ID: FA0C95B2-3A2D-4477-8760-27F4CF6595FB

12. **Processing and Storage of Email Information.** Emails extracted from Outlook (and other email servers) are formatted as .pst (or .ost) files that require processing, storage, and management, in order to be searched and reviewed. Document processing and management platforms vary in pricing but a low cost option for Three Bell is Disco. Disco charges $500 per month and $20 per GB of data per month. Here, a 224.6 GB email collection would cost approximately $4,992 per month. The processing of 224.6 GB of information would require 5-10 hours of consulting time.

13. **Collection of Other Information.** Information collected from messaging, social media, and whiteboard applications require the use of processing applications on case-by-case basis, with time estimates between 2 and 10 hours. Documents that are not electronically stored would require manually scanning and processing with various time estimates.

14. **Collection of Audio Information.** The processing of all recorded voicemails for a company of 18 employee over a four-year period is particularly onerous to estimate, depending largely on voicemail retention policies and inbox data limits. The average size of a one minute audio file is 1.2 MB, wherein, anywhere from 35 to 100 voicemails may be recorded per employee, per workday, resulting in 10s of thousands of voicemails over a four-year period.

15. **Collection of Database Information.** Databases are often configured to generate reports, with that being said, a mid-size investment firm can generate thousands of lines of data per day resulting in reports that are tens of thousands of pages, and difficult to render as readable media, and can generate excessive storage costs.

16. **Searching of Information.** Information that has been processed and stored on a document management platform (like Disco) must then be searched and batched for review. Each party should provide relevant search terms and a search term report should be generated to help identify relevant terms. Search terms should be broad enough to locate responsive documents, yet narrow enough to avoid unnecessary waste. On average, properly crafted searches can reduce the review population of 3 million documents down to 5-10%, or

4

DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

THOITS LAW
A PROFESIONAL CORPORATION

THOITS LAW

A PROFESIONAL CORPORATION

1  approximately 150,000 to 300,000 documents. The culling of documents through searching

2  would require 5 to 10 hours of consulting time under normal circumstances, albeit these are

3  not normal circumstances in light of the requests overbreadth. The subpoena at issues uses

4  the term "related to" multiple times within the same requests, over multiple requests. The

5  embedding of "related to" within a request is unduly burdensome when applying the

6  eDiscovery iterative process. For example, Requests 6 and 7 ask for all documents relating to

7  specific communications *and* documents relating to Infinity, its assets, business transactions,

8  debts, obligations, contracts, business arrangements, accounts, loans, and investment capital.

9  Not only do these requests contain multiple sub-requests, when applying the iterative

10  eDiscovery process, an initial search for Infinity would likely identify dozens, if not

11  hundreds, of investments, no matter how remotely related. In order to comply with these

12  discovery requests, Three Bell would be required to search the database for documents

13  "related to" investments that are "related to" Infinity, no matter how tenuous the connection

14  is to Infinity, considering Infinity likely has tens of 1000s of investments, many of which are

15  investments common to the investment community. This search within a search would yield

16  potentially tens of thousands of documents for review and production and many more tens of

17  thousands of dollars in discovery costs, while producing technically "responsive" documents

18  that would not reasonably lead to the discovery of relevant information.

19       17.    **Document Review.** A review team would be required to locate and code

20  responsive, confidential, and privileged documents to be produced or withheld, as well as

21  redact any personally identifiable information. Investment firms often retain sensitive client

22  materials, which would be unnecessarily exposed in response to these request, and would

23  require a circumspect inspection to remove any personally identifiable information, at a high

24  cost to Three Bell. The average document reviewer will review approximately 50 documents

25  per hour and a team of reviewers would require 3,000 to 6,000 hours to complete a document

26  review of 150,000 to 300,000 documents, in addition to review management and technical

27  support costs, with document reviewer rates ranging from $60 to $80 per hour (in the Bay

28  Area), and review management and technical support costs at twice those rates.

DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

18.     **Quality Control.** Prior to production, a quality control inspection of reviewed documents would be required with an average of one hour of quality control inspection for every ten review hours. A review of 3,000 to 6,000 hours, would require 300 to 600 quality control hours with rates ranging from $90 to $120 per hour (in the Bay Area) for a quality control reviewer.

19.     **Document Production.** The processing and packaging of responsive documents for production would require an estimate of 5 to 10 consulting hours, with a responsiveness rate of 10% and an anticipated production of 15,000 to 30,000 documents.

20.     **In sum**, to collect, search, review, and produce documents responsive to the document subpoena would cost Three Bell the following:

**Collection** (9 to 18 hours):  $3,600 to $7,200

**Processing** (5 to 10 hours):  $2,000 to $4,000

**Searching** (5 to 10 hours): $2,000 to $4,000

**Review** (3,000 to 6,000 hours): $180,000 to $360,000

**Quality Control** (300 to 600): $2,700 to $5,400

**Production** (5 to 10 hours):  $2,000 to $4,000

**Data Storage**: $4,992 per month

21.     The total cost for Third Bell to respond to the non-party subpoena would be approximately $197,292 to $389,592.

I declare under penalty of perjury of the laws of the State of California that the foregoing is true and that this declaration was executed on January 6, 2023 at Los  Angeles, California.



DocuSigned by:

Jeremy Hanika

03BFE7409479448...

Jeremy Hanika

DECLARATION OF JEREMY HANIKA ISO THREE BELL CAPITAL'S REPLY BRIEF

THOITS LAW

A PROFESIONAL CORPORATION

# EXHIBIT A

**ACTUAL DOCUMENT PRODUCTION REQUESTS WHEN USING DEFINITIONS**

1. All Documents relating to any Communication between You and Infinity relating to HASelect  is really the following request when the definitions and specified time period are included:


From the time period January 1, 2019 to January 4, 2023, all written or graphic matter and other means of preserving thought or expression and all tangible things from which information can be processed or transcribed, including the originals and all non-identical copies, whether different from the original by reason of any notation made on such copy or otherwise, including, but not limited to, correspondence, emails, memoranda, notes, messages, letters, telegrams, teletype, telefax, bulletins, meetings or other communications, inter-office and intra-office telephone calls, diaries, chronological data, minutes, books, reports, studies, summaries, pamphlets, bulletins, printed matter, charts, ledgers, invoices, worksheets, receipts, returns, computer printouts, prospectuses, financial statements, schedules, affidavits, contracts, canceled checks, statements, transcripts, statistics, surveys, magazine or newspaper articles, releases (and any and all drafts, alterations or modifications, changes and amendments of any of the foregoing), graphic or aural record or representations of any kind (including without limitation, photographs, microfiche, microfilm, videotape, records and motion pictures) and electronic, mechanical or electric records or representations of any kind (including without limitation, tapes, cassettes, discs and records) as well as all Electronically Stored Information ("ESI"), which refers to any type of information that is created, used, or stored in digital form and accessible by digital means, including but not limited to, all data, digital documents, email, electronic documents, and metadata of the same (and is further defined below) which directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed to  any oral or written statement, dialogue, colloquy, discussion, or conversation, and includes any transfer of thoughts or ideas or data or information, between persons or locations by means of any Documents or by any other means, including but not limited to electronic or similar means between Three Bell Capital, LLC, including its employees, directors, officers, members, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives and Debtor Infinity Capital Management, Inc., including its employees, directors, officers, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives. (For the avoidance of doubt, any request for Communications between You and Infinity includes Communications between You and Oliver Hemmers or Anne Pantelas (or any combination thereof) which directly or indirectly, refer to, reflect, describe, pertain to, arise out of or in connection with, or in any way legally, logically, or factually be connected with the matter discussed to HASelect-Medical Receivables Litigation Finance Fund International SP, including its employees, directors, officers, agents, servants, subsidiaries, parent company, affiliated company, and other persons acting or purporting to act on its behalf, including its Representatives.