1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
     A Limited Liability Partnership
2      Including Professional Corporations
   ORI KATZ, Cal. Bar No. 209561
3  GIANNA SEGRETTI, Cal. Bar No. 323645
   Four Embarcadero Center, 17th Floor
4  San Francisco, California 94111-4109
   Telephone:    415.434.9100
5  Facsimile:    415.434.3947
   Email  okatz@sheppardmullin.com
6  gsegretti@sheppardmullin.com

7  SHEA LARSEN PC
   KYLE WYANT, Nev. Bar No. 14652 (*admitted pro hac vice*)
8  1731 Village Center Circle, Suite 150
   Las Vegas, Nevada 89134
9  Telephone: (702) 9236-9683
   Email: kwyant@shea.law

10
   *Attorneys for HASelect-Medical Receivables*
11 *Litigation Finance Fund International SP*

12

13                **UNITED STATES DISTRICT COURT**

14              **NORTHERN DISTRICT OF CALIFORNIA**

15                      **SAN JOSE DIVISION**

16

17 In re:   Three Bell Capital, LLC Document
              Subpoena                              Case No. 5:22-mc-80338-NC
18

19 Served in Related Cases:

20 *In re Infinity Capital Management, Inc., U.S.*    **STATUS REPORT REGARDING**
   *Bankruptcy Court, District of Nevada Case*       **DISCOVERY DISPUTE AND**
21 *No. 21-14486-abl*                                **PROPOSED ORDER**

22 *and adversary proceeding*                        Date of Hearing: January 18, 2023
                                                    Time of Hearing: 11:30 a.m.
23 *HASelect-Medical Receivables Litigation*
   *Finance Fund International SP v.*
24 *Tecumseh-Infinity Medical Receivables*
   *Fund, LP, Adv. Proc. No. 21-01167-abl*
25

26        HASelect-Medical Receivables Litigation Finance Fund International SP ("HASelect") by

27 and through its undersigned counsel, submits this Status Report pursuant to the Court's instructions

28

at January 11, 2023 hearing on Three Bell Capital, LLC's ("Three Bell") *Motion to Quash HASelect-Medical Receivables Litigation Finance Fund International SP's Subpoena to Produce Documents* [ECF No. 1] (the "Motion"). The following represents the true and correct communications and meet-and-confer attempts between counsel for HASelect and counsel for Three Bell:

1.     At the hearing on the Motion (the "Hearing"), the Court indicated that it was not making any findings of fact or conclusions of law, but stated that, in order to resolve this without judicial decision, the parties should re-engage in the meet and confer process regarding the Subpoena to Three Bell.

2.     At the Hearing, the Court advised HASelect that it should provide Three Bell's counsel with a narrow time period for documents requested, limit the categories of documents requested, and provide search terms for information that HASelect seeks by way of the Subpoena and to assist Three Bell with searching its emails for responsive documents.

3.     Prior to Three Bell filing its Motion and as set forth in the Opposition [ECF No. 6, Ex. 18, pp. 233-234], HASelect attempted to engage in such narrowing efforts for the Subpoena in order to resolve this without judicial intervention.  Indeed, on December 20, 2022, counsel for HASelect narrowed the Subpoena to essentially seeking two classes of documents—emails from January 1, 2020 through December 31, 2021 between three specifically identified individuals associated with Three Bell and the following two entities: (1) Debtor Infinity Capital Management, Inc. from the bankruptcy proceeding from which this subpoena related and (2) FTM due to emails between its members and Three Bell of which HASelect was already aware.[1]  In response to this email, Three Bell's counsel stated that he would not expect such a search "to exceed $10,000." [ECF No. 6, Ex. 18, p. 233].

4.     Pursuant to the Court's advice, on January 12, 2023—the day after the hearing—HASelect sent an email offering to narrow the scope of the Subpoena to the same two categories

---

[1] At the Hearing, counsel for HASelect also advised the Court that another batch of documents—emails between Three Bell and Tecumseh—would also be sought as it was relevant to the adversary proceedings between the parties. However, in an attempt to lessen the any alleged burden on Three Bell, HASelect offered to exclude such communications from the scope of the Subpoena.

requested before Three Bell filed its Motion, and further providing specific email addresses for three individuals at Three Bell that are known to have communicated with Infinity along with the email addresses known to be used by specific individuals at FTM and Infinity.  Further, HASelect provided 31 search terms (despite the relevant information including much more) for Three Bell to use in searching these three email accounts for its members.[2]

5.     HASelect further offered to pay Three Bell's actual and reasonable costs of up to $10,000 (provided documentation substantiating these costs were provided) based on Three Bell's counsel's initial statements that such costs would not exceed this amount for substantially the same search that had now been even further refined.

6.     Three Bell's counsel, in response, stated that it would be much more than $10,000 and that HASelect should also be responsible for Three Bell's attorneys' fees,[3] despite the same counsel stating at the Hearing on the Motion that "he did not need to bring the Motion" and "could have forced HASelect to file a Motion to Compel."

7.     On January 13, 2023, HASelect's counsel offered to have a further meet-and-confer call on Sunday at 10:00 a.m. (January 15, 2023); however, Three Bell's counsel did not respond to such an offer until Monday, January 16, 2023 and asked if the afternoon would work. HASelect's counsel agreed to such a request, which was further pushed by Three Bell's counsel.[4]

8.     HASelect's counsel communicated with Three Bell's counsel on January 16, 2023 at 3:00 p.m. in another good faith meet-and-confer attempt to resolve the Subpoena without the Court intervening.

9.     Following the phone call, Three Bell's counsel sent a lengthy email stating that any search for the 31 provided key words for three email addresses associated with the Three Bell individuals would cost between $38,950 to $78,500, wherein Three Bell charges $400 per hour to

---

[2] *See* email chain between HASelect's counsel and Three Bell's counsel regarding Subpoena, attached hereto as **Exhibit A**.

[3] *Id.*

[4] *Id.*

1   perform any discovery efforts.[5]   Additionally, Three Bell stated that attorneys' fees would also be

2   sought in addition to this amount, which would require HASelect to pay upwards of $100,000 for

3   the information it seeks from the three (3) Three Bell email addresses at issue.[6]

4          10.     Based on the foregoing, the parties could not agree to resolve this matter despite

5   HASelect's further narrowing of the Subpoena in accordance with this Court's instructions.  As such,

6   HASelect is filing this Status Report in accordance with the Court's instructions, and is providing a

7   proposed order herewith as **Exhibit B**.

8          Dated:  January 17, 2023

9                                          SHEA LARSEN, PC

10

11                             By        _____
                                                    */s/ Kyle Wyant*
12                                           KYLE WYANT

13                                      Attorneys for HASelect-Medical Receivables
                                        Litigation Finance Fund International SP
14

15

16

17

18

19

20

21

22

23

24

25

26

_____

27   [5] *Id.*

28   [6] *Id.*

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, I electronically transmitted the foregoing **STATUS REPORT REGARDING DISCOVERY DISPUTE AND PROPOSED ORDER** to the Office of the Clerk of the United States District Court, Northern District of California, using the CM/ECF System, for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants listed for this matter.

By: /s/ *Kyle M. Wyant, Esq.*

# EXHIBIT A

**Bart Larsen**

| | |
|---|---|
| **From:** | Bart Larsen |
| **Sent:** | Tuesday, January 17, 2023 10:45 AM |
| **To:** | Zonne, Melissa |
| **Cc:** | Boennighausen, Mark V.; Kyle Wyant; Lawal, Monica; Hanika, Jeremy |
| **Subject:** | RE: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell |

Melissa:

I appreciate you taking time yesterday to discuss this matter.

As I mentioned during our call, I think your expert is overestimating the work that would be required to respond to the narrowed scope of the requests as described in Kyle's email from last Thursday. Collecting and processing the three PST files at issue (jon@three-bell.com, will@three-bell.com, and eric@three-bell.com) for the relevant time period should take no more than a few hours at most. Similarly, it should not take more than an hour or so to sort those files by sender/recipient to identify the subsets of emails, if any, exchanged with the 12 email address we identified for Infinity and FTM. Only these specific subsets of emails, which I do not expect would more than 100 – 200 emails, would need to be searched for responsive terms and reviewed prior to production. There is no reason the cost of identifying, reviewing, and producing these emails should exceed Mark's original estimate of $10,000.

Perhaps it would make sense to separate the tasks of identifying and reviewing the emails into two parts. Based on the breakdown of your expert's estimate below, it seems that the cost to identify the subsets of emails that would need to be reviewed should be no more than $2,000 or so. Once we know how many emails are included in those subsets, it should be much easier to determine a reasonable cost for the review.

HASelect is not willing to reimburse Three Bell's attorney fees. From the first time you and I discussed the subpoena in early December, I have repeatedly stated that I am willing to work with you to reasonably narrow the scope of the subpoena and have tried to address your client's ongoing objections on several occasions. Your client, however, rejected these efforts and steadfastly refused to respond to the subpoena in any form prior to filing the motion to quash.

Finally, as I have explained several times, the subpoena was not intended to harass your client in any way, nor was the prior subpoena issued in January of last year. Shortly after Infinity's chapter 7 case was filed on September 14, 2021, the chapter 7 trustee abandoned substantially all of Infinity's assets to HASelect. We gained access to Infinity's office and computer systems in October 2021 and found that most of Oliver Hemmers' emails had been deleted, that the two Infinity servers in the office, which contained the vast majority of Infinity's business records has been disabled, and that a third server that contained Infinity's record archives was missing along with other computer equipment. We also discovered around that time that Infinity had sold millions of dollars of HASelect's collateral to Tecumseh prior to the bankruptcy filing and that Infinity's principals, Oliver Hemmers and Anne Pantelas, had set up a new company to continue Infinity's business operations with Tecumseh outside of the chapter 7 case. Over the next few months, we issued roughly 20 subpoenas to third parties, including Three Bell, as we tried to recover records that were taken or deleted by Infinity and tried to determine the extent to which HASelect's collateral had been sold to Tecumseh. By March of 2021, we had gained access to Infinity's servers, recovered the missing archive server, and obtained copies of what was left of Infinity's email archives, which left us with several terabytes of data to review. By March of 2021, we were also actively engaged in discovery with Tecumseh in the adversary proceeding. As such, we chose not to pursue enforcement of the prior subpoena against Three Bell at that time.

The current subpoena was issued last October because, after several months of discovery, there remained significant questions as to the nature of the relationship between Infinity and Tecumseh, Tecumseh's conduct towards HASelect,

and the transactions through which Infinity sold HASelect's collateral to Tecumseh.  Further, based on the incomplete record of communications were recovered from Infinity's email archives, we have good reason to believe that these matters were discussed among Three Bell, Tecumseh, FTM, and Infinity.  There was no improper purpose behind the issuance of the current subpoena.  We made reasonable attempts to obtain these communications from Tecumseh, FTM, and Infinity prior to issuing the current subpoena.  While we may disagree as to the sufficiency of our ongoing efforts to obtain communications from Tecumseh, we have no viable alternative for obtaining Three Bell's communications with Infinity or FTM.  Furthermore, under the compromise we have offered communications in Tecumseh's possession would be excluded from the scope the documents to be provided under the subpoena, which should resolve Three Bell's objection as to HASelect's efforts to obtain those communications from Tecumseh.

As always, I would be happy to discuss this matter with you further by telephone if you feel a call would be helpful.  If not, we will report to the court that we were unable to reach a resolution.

Thanks.

Bart K. Larsen, Esq.
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Office: (702) 471-7432
Direct: (702) 255-0098
Mobile: (702) 321-6528
Email: blarsen@shea.law

This message was sent from Shea Larsen PC and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

**From:** Zonne, Melissa <MZonne@thoits.com>
**Sent:** Monday, January 16, 2023 4:15 PM
**To:** Bart Larsen <blarsen@shea.law>
**Cc:** Boennighausen, Mark V. <MBoennighausen@thoits.com>; Kyle Wyant <kwyant@shea.law>; Lawal, Monica <MLawal@thoits.com>; Hanika, Jeremy <JHanika@thoits.com>
**Subject:** RE: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

Bart:

Thanks for speaking with me. To follow-up on our call, I spoke to Jeremy, our eDiscovery expert, and can provide this further detail:

The upfront burden is the collection of the entire PST files of each of the email addresses you have requested for the 2 year period sought. Collection, processing and searching will be based on that large volume. Even if you are correct that ultimately there are only a few hundred responsive documents, we still need to conduct a review of exponentially more documents than that in order to rule out any false positives and locate those responsive documents, even after we run search terms from your requests.

Below is Jeremy's estimated breakdown based on his extensive experience conducting collection/review, with a conservative cost estimate of approximately: $58,225. Jeremy does agree that if you are correct that the review volume should be vastly reduced because there aren't that many communications between these parties, this amount will go down; nevertheless, the review estimate is not predicated on the number of responsive documents *after* the review, but rather the number of documents with search term hits and their respective family members.

However, as I mentioned on the call, my client still considers this to be harassment and believes the subpoena will be quashed and fees awarded based on the law and the record.  Additionally, my client will not consider compromising its position without a commitment that your client will pay the full amount spent, including the roughly $25,000 in attorney fees, whatever that ends up being. If you are confident the review cost would be far less than the below amount, then perhaps your client is willing to agree to that.

Collection (2 to 3 hours): $800 to $1,200

Processing (2 to 3 hours): $800 to $1,200

Searching (2 to 3 hours): $800 to $1,200

Review (500 to 1000 hours): $30,000 to $60,000

Quality Control (50 to 100 hours): $4,500 to $12,000

Production (2 to 3 hours): $800 to $1,200

Data storage: (18 GB) $1,250

Total: $38,950 to $78,500

As a reminder, my client would not be able to complete this process and produce documents until, *at the earliest*, mid-February.

Please let me know your client's position on this, or alternatively, if, as we discussed, your client is willing to drop this endeavor and I can speak to my client about agreeing not to pursue fees. As stated, my client has already spent more than $25,000 in fees and they continue to accrue.

Alternatively, we would ask that your client abandon all efforts to burden Three Bell with this discovery while it pursues party discovery. You represented that Tecumseh depositions are not yet on calendar, but you hope to take them next month. You also mentioned that you expect to move to compel documents from Tecumseh as well, and that counsel for Tecumseh told you as recently as last week that the "Three Bell documents" may be forthcoming even without a motion. As we discussed, it is entirely inappropriate to pursue this information from a third-party without first pursuing

the documents from the party itself, and it is unclear why that has not been done. We expect you to take these measures with the same urgency and effort as you have pursued the subpoena(s) against my client. We will raise this issue again with Judge Cousins if your client does not agree to abandon its improper and burdensome non-party discovery.

Please let me know your thoughts – I look forward to hearing from you.  Given the timing of our filing tomorrow morning, I need a response in writing by 8pm.

Melissa

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | [www.thoits.com](http://www.thoits.com)  |  [MZonne@thoits.com](mailto:MZonne@thoits.com)

**Confidentiality Notice.**  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Bart Larsen [[mailto:blarsen@shea.law](mailto:blarsen@shea.law)]
**Sent:** Monday, January 16, 2023 12:50 PM
**To:** Zonne, Melissa <[MZonne@thoits.com](mailto:MZonne@thoits.com)>
**Cc:** Boennighausen, Mark V. <[MBoennighausen@thoits.com](mailto:MBoennighausen@thoits.com)>; Kyle Wyant <[kwyant@shea.law](mailto:kwyant@shea.law)>; Lawal, Monica <[MLawal@thoits.com](mailto:MLawal@thoits.com)>; Hanika, Jeremy <[JHanika@thoits.com](mailto:JHanika@thoits.com)>
**Subject:** RE: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

3pm would be fine.  I'll be available at (702) 321-6528.

Thanks.

Bart K. Larsen, Esq.
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Office: (702) 471-7432
Direct: (702) 255-0098
Mobile: (702) 321-6528
Email: [blarsen@shea.law](mailto:blarsen@shea.law)

This message was sent from Shea Larsen PC and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

---

**From:** Zonne, Melissa <[MZonne@thoits.com](mailto:MZonne@thoits.com)>
**Sent:** Monday, January 16, 2023 12:30 PM
**To:** Bart Larsen <[blarsen@shea.law](mailto:blarsen@shea.law)>
**Cc:** Boennighausen, Mark V. <[MBoennighausen@thoits.com](mailto:MBoennighausen@thoits.com)>; Kyle Wyant <[kwyant@shea.law](mailto:kwyant@shea.law)>; Lawal, Monica

<MLawal@thoits.com>; Hanika, Jeremy <JHanika@thoits.com>
**Subject:** Re: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

Can we push this to 3pm? If so, let me know the best number for you today and I'll call you then.


> On Jan 16, 2023, at 8:19 AM, Bart Larsen <blarsen@shea.law> wrote:

> Would 2:00 pm work?

> Sent from my iPhone


>> On Jan 16, 2023, at 7:58 AM, Zonne, Melissa <MZonne@thoits.com> wrote:

>> Bart - How is your schedule this afternoon? I'm fairly open.


>>> On Jan 13, 2023, at 4:11 PM, Bart Larsen <blarsen@shea.law> wrote:

>>> Would 10:00 am on Sunday work?  If not, I can be available any time on Sunday or Monday.

>>> Thanks.

>>> Bart K. Larsen, Esq.
>>> SHEA LARSEN
>>> 1731 Village Center Circle, Suite 150
>>> Las Vegas, Nevada 89134
>>> Office: (702) 471-7432
>>> Direct: (702) 255-0098
>>> Mobile: (702) 321-6528
>>> Email: blarsen@shea.law

>>> This message was sent from Shea Larsen PC and is intended only for the designated recipient(s). It may contain confidential or proprietary information and may be subject to the attorney-client privilege or other confidentiality protections. If you are not a designated recipient, you may not review, copy or distribute this message. If you receive this in error, please notify the sender by reply e-mail and delete this message. Thank you.

>>> **From:** Zonne, Melissa <MZonne@thoits.com>
>>> **Sent:** Friday, January 13, 2023 3:42 PM
>>> **To:** Boennighausen, Mark V. <MBoennighausen@thoits.com>; Kyle Wyant <kwyant@shea.law>
>>> **Cc:** Bart Larsen <blarsen@shea.law>; Lawal, Monica <MLawal@thoits.com>; Hanika, Jeremy <JHanika@thoits.com>
>>> **Subject:** RE: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

Kyle,
Please let me know your availability for a short call to discuss. Given the short turnaround time on this, I am available this weekend, or Monday morning. Thank you.

**Melissa Zonne**
**Thoits Law** | 400 Main St, #250, Los Altos, CA 94022
650.327.4200 | www.thoits.com  |  MZonne@thoits.com

**Confidentiality Notice**.  The information contained in this e-mail and any accompanying attachments, all of which may be confidential or privileged, is intended only for use by the person or entity to whom it is addressed.  If you are not the intended recipient, any unauthorized use, disclosure or copying of this e-mail and its contents is strictly prohibited and may be unlawful.  If you are not the intended recipient, please immediately notify the sender by return e-mail and delete the original message and all copies from your system.  Thank you.

---

**From:** Boennighausen, Mark V.
**Sent:** Thursday, January 12, 2023 4:58 PM
**To:** Kyle Wyant <kwyant@shea.law>
**Cc:** Bart Larsen <blarsen@shea.law>; Zonne, Melissa <MZonne@thoits.com>; Lawal, Monica <MLawal@thoits.com>
**Subject:** RE: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

Kyle,

Thanks for the e-mail.  We will forward this to our ediscoery professional to get an estimate of the cost  of responding and Ms. Zonne will set up a call to discuss.  We have not and will not agree to a hard cap on costs and we believe Three Bell is entitled to at least a portion of the roughly $25,000 our client has incurred in responding to your client's attempt to subpoena Three Bell.  See *Nitsch v. DreamWorks Animation SKG Inc.*, 2017 WL 930809. (ND CA 2017) (awarding more than $50,000 to non-party in responding to document requests, including attorney fees incurred responding).

On the call, please also be prepared to discuss the status of your client's discovery against Tecumseh, including bringing a motion to compel the Three Bell communications from it and when and if your client will be taking any Tecumseh depositions in the near future.

As stated in our motion, our client believes this endeavor is harassing conduct and it is unfortunate it took this long to get specific narrowed requests despite Ms. Zonne asking for such information back in March 2022 and that  prior to seeking information from Three Bell in January 2022 and December 2022 your client had not sought this information directly from the adversary party, Tecumseh, in Nevada through a motion to compel and deposition testimony.

6

Best regards,

Mark

---

**From:** Kyle Wyant [mailto:kwyant@shea.law]
**Sent:** Thursday, January 12, 2023 4:37 PM
**To:** Boennighausen, Mark V. <MBoennighausen@thoits.com>; Zonne, Melissa <MZonne@thoits.com>; Lawal, Monica <MLawal@thoits.com>
**Cc:** Bart Larsen <blarsen@shea.law>
**Subject:** Re: In re: Infinity Capital Management, Inc. - Subpoenas to Three Bell

Good afternoon, Mark –

Per the Judge's instructions from the hearing yesterday, please find our proposal regarding limiting the subpoena (to two categories) and costs:

1. Communications between Three Bell Capital and **FTM** from January 1, 2020 through December 31, 2021
    1. Three Bell Capital (Jon Porter [jon@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame, Will Martin [will@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame, and/or Eric Patterson [eric@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame) and **FTM** (Endre Debozy [endre@ftm-investments.com] and/or Bill Dalzell [bill@ftm-investments.com, dalzellbb@mithril.ca] )
2. Communications between Three Bell Capital and **Infinity** from January 1, 2020 through December 31, 2021
    1. Three Bell Capital (Jon Porter [jon@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame, Will Martin [will@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame, and/or Eric Patterson [eric@three-bell.com] or any email used by him for Three Bell business during the above-referenced time frame) and **Infinity** (Oliver Hemmers [oliver@infinitycapital.com, oliver@infinityhealth.com, oliver@infinityhealth.solutions, oliver.hemmers@gmail.com, ohemmers@hotmail.com, and ohemmers@icloud.com] and/or Anne Pantelas

[anne@infinitycapital.com,
anne@infinityhealth.com, and
anne@infinityhealth.solutions])

3.  These two sets of communications would be limited to the
following subject matter (with potential search terms
included):

 1.  1. Any purchase, collection, sale, assignment,
 transfer or other disposition of accounts receivable
 owned or serviced by Infinity; (key search terms
 would include "A/R" "AR" "accounts" "receivable!"
 "sale" "assign!" "transfer" "collect!" "buy"
 "purchase!" "transfer")

 2.  2. The status, value, handling, or disposition of
 accounts receivable owned or serviced by Infinity
 or any other personal property pledged by Infinity
 as collateral for any indebtedness owed to
 HASelect; (key search terms to look for (in addition
 to those encompassed by the above terms) would
 include "value" "recover" "worth" "servic!")

 3.  3. Any actual or contemplated transfer by Infinity
 to Tecumseh of accounts receivable owned or
 serviced by Infinity or any other personal property
 pledged by Infinity as collateral for any
 indebtedness owed to HASelect (key search terms
 (in addition to those encompassed by the above
 terms) would be "HASelect" "Hedgeact"
 "collateral")

 4.  4. Any transactions taking place between Infinity
 and Tecumseh or the nature of Infinity's business
 relationship with Tecumseh; (key search terms (in
 addition to those encompassed by the above
 terms) would be "Tecumseh" and "Infinity")

 5.  5. Any transactions taking place between FTM and
 Tecumseh or the nature of FTM's business
 relationship with Tecumseh; (key search terms (in
 addition to those encompassed by the above
 terms) would be "FTM" and "relationship" and
 "business")

 6.  6. Infinity's bankruptcy filing; or (key search terms
 (in addition to those encompassed by the above
 terms) would be "bankruptcy")

 7.  7. Any request by FTM, Infinity, or Tecumseh that
 Three Bell Capital seek a redemption of its
 investment in HASelect or take other action against
 HASelect. (key search terms (in addition to those
 encompassed by the above terms) would be
 "redemption" or "redeem" or "recover" or "get

out" or "extract" or "HASelect" or "Hedge" or
"invest!").

4. The totality of search terms to look for in the above-
referenced emails would thus be as follows: "A/R" "AR"
"accounts" "receivable!" "sale" "assign!" "transfer"
"collect!" "buy" "purchase!" "value" "money" "worth"
"servic!" "collateral" "FTM" "relationship" "business"
"Tecumseh" "Infinity" "HASelect" "Hedge" "invest"
"recover!" "redemption" "redeem" "get out" "extract"
"bankruptcy" "adversary" "proceed!"

Based on your previous email stating that such a search would
cost no more than $10,000 for these two categories, HASelect is
willing to reimburse Three Bell's reasonable and actual costs in an
amount of up to $10,000 on the condition that substantiating
documentation supporting such costs is provided.

Best,

Kyle M. Wyant, Esq.
SHEA LARSEN
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Office: (702) 471-7432
Direct: (702) 779-3816
Mobile: (301) 606-4092
Email: kwyant@shea.law

This message was sent from Shea Larsen and is intended only for the
designated recipient(s). It may contain confidential or proprietary information
and may be subject to the attorney-client privilege or other confidentiality
protections. If you are not a designated recipient, you may not review, copy or
distribute this message. If you receive this in error, please notify the sender by
reply e-mail and delete this message. Thank you.

# EXHIBIT B

1

2

3

4

5

6

SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
ORI KATZ, Cal. Bar No. 209561
GIANNA SEGRETTI, Cal. Bar No. 323645
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:     415.434.3947
Email  okatz@sheppardmullin.com
gsegretti@sheppardmullin.com

SHEA LARSEN PC
KYLE WYANT, Nev. Bar No. 14652 (*admitted pro hac vice*)
1731 Village Center Circle, Suite 150
Las Vegas, Nevada 89134
Telephone: (702) 9236-9683
Email: kwyant@shea.law

*Attorneys for HASelect-Medical Receivables
Litigation Finance Fund International SP*

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

22

23

24

25

26

27

28

| | |
|---|---|
| In re:   Three Bell Capital, LLC Document Subpoena<br><br>Served in Related Cases:<br><br>*In re Infinity Capital Management, Inc., U.S. Bankruptcy Court, District of Nevada Case No. 21-14486-abl*<br><br>*and adversary proceeding* | Case No. 5:22-mc-80338-NC<br><br>**PROPOSED ORDER**<br><br>Date of Hearing: January 18, 2023<br>Time of Hearing: 11:30 a.m. |

1
2

*HASelect-Medical Receivables Litigation*
*Finance Fund International SP v.*
*Tecumseh-Infinity Medical Receivables*
*Fund, LP, Adv. Proc. No. 21-01167-abl*

3

4      The Court, having reviewed Three Bell Capital, LLC's ("Three Bell") *Motion to Quash*

5 *HASelect-Medical Receivables Litigation Finance Fund International SP's Subpoena to Produce*

6 *Documents* [ECF No. 1] (the "Motion"), HASelect-Medical Receivables Litigation Finance Fund

7 International SP ("HASelect") Opposition thereto [ECF No. 6], and Three Bell's Reply [ECF No.

8 9], as well as the status reports submitted by the parties following the continued hearing on the

9 Motion from January 11, 2023, and all other evidence submitted by the parties and the papers and

10 pleadings on file herein, and the oral argument of counsel, the Court makes the following findings

11 and conclusions of law:

12                                    **FINDINGS OF FACT**

13      1.      HASelect's Subpoena to Three Bell (the "Subpoena") was issued in an adversary

14 proceeding pending in the U.S. Bankruptcy Court for the District of Nevada (the "Bankruptcy

15 Court"), Case No. 21-01167-abl, (the "Adversary Proceeding") in connection with the chapter 7

16 bankruptcy case of Infinity Capital Management, Inc. ("Infinity").   The facts underlying the

17 Adversary Proceeding and the need for the information requested in the Subpoena are as follows.

18      2.      In February 2019, HASelect entered into a secured lending relationship with Infinity

19 through which HASelect received a perfected first-priority security interest in all personal property

20 owned by Infinity.  From February 2019 through April 2020, HASelect advanced approximately $16

21 million in loan proceeds to Infinity.  Such loan proceeds were intended for use by Infinity to purchase

22 accounts receivable from various medical providers arising from treatment provided to personal

23 injury claimants.  HASelect's perfected security interest encompassed all such accounts purchased

24 by Infinity prior to Infinity's chapter 7 bankruptcy filing.  HASelect engaged the services of FTM

25 Limited to act as a subadvisor and fiduciary to assist in the administration of the loan to Infinity.

26 Griffin Asset Management, LLC ("GAM") serves as an asset manager to HASelect.  Through its

27 relationship with GAM, Three Bell and/or its clients invested funds with HASelect that were used

28

1    to fund HASelect's loan to Infinity.

2         3.      In early 2020, two former employees of GAM, Simon Clark and Chad Meyer, formed

3    Tecumseh-Infinity Medical Receivables Fund, LP ("Tecumseh") and, together with the principals

4    of FTM Limited, William Dalzell and Endre Debozy, began soliciting Infinity to terminate its

5    relationship with HASelect and to enter into an alternative financing arrangement with Tecumseh.

6    As a result of these solicitations, Infinity's borrowing relationship with HASelect was terminated,

7    and Infinity entered into a Sub-Advisory Agreement with Tecumseh on June 18, 2020 under which

8    it was contemplated that Infinity would assist Tecumseh in locating and purchasing accounts from

9    medical providers.    Additionally, Tecumseh engaged the principals of FTM Limited, Dalzell and

10   Debozy (ostensibly acting through a new entity) (collectively, "FTM") to provide administrative

11   services in connection with this new funding arrangement.

12        4.      In filing its chapter 7 case on September 14, 2021, Infinity claimed to own accounts

13   worth less than $6 million despite admittedly owing more than $14 million to HASelect. In

14   investigating the basis for this significant shortfall in the collateral for its loan to Infinity, HASelect

15   discovered that Infinity had not merely assisted Tecumseh in locating and purchasing accounts from

16   third party medical providers as described in the Sub-Advisory Agreement.   Rather, immediately

17   upon entering into the Sub-Advisory Agreement, Infinity sold millions of dollars in accounts

18   included within HASelect's collateral directly to Tecumseh. Further, HASelect discovered that, after

19   entering into the Sub-Advisory Agreement, Infinity continued to purchase accounts in its own name

20   using funds provided by Tecumseh that were commingled with proceeds Infinity continued to collect

21   from accounts included within HASelect's collateral.

22        5.      Based on these discoveries, HASelect commenced the Adversary Proceeding against

23   Tecumseh on October 19, 2021 in which it has asserted claims for declaratory relief, conversion,

24   and unjust enrichment against Tecumseh and seeks a determination that all accounts purchased by

25   Infinity, including those funded by Tecumseh under the Sub-Advisory Agreement, are subject to

26   HASelect's perfected, first-priority security interest and remain collateral for HASelect's loan to

27   Infinity.   In response, Tecumseh asserted counterclaims against HASelect and Infinity's chapter 7

28

trustee, alleging that Tecumseh is the equitable owner of the disputed accounts at issue despite the fact they were purchased by Infinity in its own name and claiming that Infinity held those accounts in an equitable trust for Tecumseh's benefit.  In response to Tecumseh's counterclaims, HASelect has asserted equitable defenses, including, but not limited to, the fact that Tecumseh cannot seek equity as a result of its unclean hands.

6.    In response to Tecumseh's counterclaim, the chapter 7 trustee asserted his own counterclaim against Tecumseh seeking to avoid any unperfected interest claimed by Tecumseh in the disputed accounts pursuant to 11 U.S.C. §§ 544 and 551.  Subsequent to the filing of the chapter 7 trustee's counterclaim, HASelect purchased the Infinity chapter 7 estate's interests in the disputed accounts from the chapter 7 trustee through a 363 sale approved by the bankruptcy court.  Thereafter, HASelect substituted into to the chapter 7 trustee's position in the Adversary Proceeding.  Consequently, HASelect now sits in the position of the chapter 7 trustee in terms of defending Tecumseh's counterclaims against the chapter 7 trustee and in pursuing the chapter 7 trustee's counterclaim against Tecumseh.

7.    Discovery in the Adversary Proceeding is set to close on January 31, 2023.

8.    The Subpoena sets forth 19 separate document requests which fall into six discrete categories: Three Bell's communications with Infinity (requests 1 – 5), Three Bell's communications with Tecumseh (requests 6 – 9), Three Bell's communications with FTM (requests 10 – 14), Three Bell's communications with third parties regarding HASelect's relationships with Infinity or FTM (request 15), Three Bell's communications with third parties regarding Tecumseh's relationships with Infinity or FTM (request 16), and documents relating to any agreement between Three Bell and either Infinity, Tecumseh, or FTM relating to the sale, purchase, sourcing, servicing, collection, or valuation of accounts receivable (requests 17 – 19).

9.    However, on December 20, 2022, counsel for HASelect narrowed the Subpoena to essentially seeking two classes of documents—emails from January 1, 2020 through December 31, 2021 between three specifically identified individuals associated with Three Bell and the following two entities: (1) Debtor Infinity Capital Management, Inc. from the bankruptcy proceeding from

which this subpoena related and (2) FTM due to emails between its members and Three Bell of which HASelect was already aware.[1] In response to this email, Three Bell's counsel stated that he would not expect such a search "to exceed $10,000." [ECF No. 6, Ex. 18, p. 233].

10.     On January 11, 2023, the Motion came before this Court, and the Court advised the parties to further engage in meet-and-confer efforts in an attempt to resolve this matter without Court intervention and ruling. The Court advised HASelect to further limit the Subpoena by providing search terms that would be relevant to the information sought.

11.     At the hearing, Three Bell's counsel made representations on the record that Three Bell did not have to file the Motion and could have waited until HASelect filed a Motion to Compel.

12.     Pursuant to the Court's advice, on January 12, 2023—the day after the hearing—HASelect sent an email narrowing the Subpoena to the original two categories requested before Three Bell ever filed its Motion, and further providing specific email addresses that are known to HASelect to be used by the three specifically identified individuals at Three Bell and the email addresses known to be used by the specific individuals at FTM or Infinity.  Further, HASelect provided 31 search terms (despite the relevant information including much more) for Three Bell to use in searching these three email accounts for its members.

13.      HASelect further agreed to pay up to $10,000 (provided documentation substantiating these costs were provided) based on Three Bell's counsel's statements that it would not exceed this amount for the identical search that had now been even further refined.

14.     Three Bell's counsel, in response, stated that it would be much more than $10,000 and that HASelect should also be responsible for Three Bell's attorneys' fees, which were in excess of $25,000 for the Motion.

15.     On January 13, 2023, HASelect's counsel offered to have a further meet-and-confer call on Sunday at 10:00 a.m. (January 15, 2023); however, Three Bell's counsel did not respond to

---

[1] At the Hearing, counsel for HASelect also advised the Court that another batch of documents—emails between Three Bell and Tecumseh—would also be sought as it was relevant to the adversary proceedings between the parties. However, in an attempt to lessen the any alleged burden on Three Bell, such a request was ultimately dropped.

1   such an offer until Monday, January 16, 2023 and asked if the afternoon would work. HASelect's

2   counsel agreed to such a request, which was further pushed by Three Bell's counsel.

3        16.    Following the phone call, Three Bell's counsel sent a lengthy email stating that any

4   search for the 31 provided search terms for three email addresses associated with the Three Bell

5   individuals would cost between $38,950 to $78,500, wherein Three Bell charges $400.00 per hour

6   to perform any discovery efforts.  Additionally, Three Bell stated that attorneys' fees would also be

7   sought in addition to this amount, which would require HASelect to pay upwards of $100,000.00 for

8   the information it seeks from three email addresses.

9        17.    Three Bell's counsel demanded a response agreeing to such proposal within four

10  hours.

11       18.    As the Parties could not resolve this matter, it came back before the Court on January

12  18, 2023 at 11:30 a.m.

13       19.    Any finding of fact stated herein that is more appropriately labeled a conclusion of

14  law shall carry such a designation.

15                              **CONCLUSIONS OF LAW**

16       1.    Under Fed. R. Civ. P. Rule 26(b), the scope of discovery is broad. Pre-trial discovery

17  is "accorded a broad and liberal treatment." *Hickman v. Taylor*, 329 U.S. 495, 507 (1947). A party

18  "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or

19  defense." Fed. R. Civ. P. 26(b). Moreover, "information within this scope of discovery need not be

20  admissible in evidence to be discoverable." *Id*.

21       2.    "A non-party can be compelled to produce evidence regarding any matter relevant to

22  the subject matter involved in the pending action or reasonably calculated to lead to the discovery

23  of admissible evidence." *Shoen v. Shoen*, 5. F. 3d 1289, 1292 (9th Cir. 1993). "This broad right of

24  discovery is based on the general principle that litigants have a right to every man's evidence, and

25  that wide access to relevant facts serves the integrity and fairness of the judicial process by

26  promoting the search for truth." *Id*., *quoting U.S. v. Bryan*, 339 U.S. 323 (1950).

27       3.    FRCP 45(d)(3) [Quashing or Modifying a Subpoena] provides the following:

28

(A) When Required. On timely motion, the court for the district where compliance is required must quash or modify a subpoena that:
(i) fails to allow a reasonable time to comply;
(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);
(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or
(iv) subjects a person to undue burden.

4.      Irrelevance is not contained within the list of enumerated reasons for quashing a subpoena found in Rule 45.  "It is well settled, however, that the scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34." *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662 (D. Kan. 2003); FRCP 45(d)(1) (advisory committee's note to the 1970 Amendment).  Thus, the court must examine whether a request contained in a subpoena is overly broad or seeks irrelevant information under the same standards as set forth in Rule 26(b) and as applied to Rule 34 requests for production.  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005)("courts have incorporated relevance as a factor when determining motions to quash a subpoena.").

5.      The party asserting the objections (i.e., the moving party on a motion to quash) has the burden of persuasion under FRCP 45.  *See, e.g.*, *Chevron Corp. v. Donziger*, 2013 U.S. Dist. LEXIS 119622, *13 (N.D. Cal. Aug. 22, 2013). This includes proving that the information sought is overly broad and unduly burdensome.  *See, e.g.*, *Antman v. Uber Techs., Inc.*, 2015 U.S. Dist. LEXIS 162531 (N.D. Cal. Dec. 2, 2015) ("[T]he non-party seeking to modify a subpoena…has the burden of persuading the court that the subpoena presents an undue burden.").  All that is required of the moving party is to show that the discovery sought is relevant.  *Id.* (denying a motion to quash).

A.      **HASelect's Subpoena is not overly broad or unduly burdensome, especially following narrowing efforts by HASelect.**

6.      Three Bell's Motion alleges that the Subpoena requests "19 separate categories of documents" that are "untied to time" and fail to "describe the documents sought with any reasonable particularity." However, the Motion does not explain how the 19 categories are overly broad or improper and thus, Three Bell has not met its burden in moving to quash the Subpoena.

7.      Moreover, HASelect has further limited the 19 categories down to 2 categories, seeking only communications between Three Bell and FTM and communications between Three

1    Bell and Infinity, and has provided the relevant email addresses known to HASelect relating to these

2    entities. HASelect had already attempted to limit the Subpoena to these 2 categories prior to Three

3    Bell filing its Motion and provided additional detail following the original Hearing set for the

4    Motion.

5       8.  HASelect has further limited the time frame from January 1, 2020 through December

6    31, 2021 and has provided only 31 search terms to be utilized in finding relevant emails. HASelect

7    has in good faith limited the Subpoena to ensure that the Subpoena, as it came before the Court for

8    hearing, is not overly broad and the Court finds that the Subpoena, as it came before the Court, is

9    not overly broad.

10      9.  Nor is the Subpoena unduly burdensome. District courts have broad discretion to

11   determine whether a subpoena is unduly burdensome. *See Exxon Shipping Co. v. U.S. Dep't of*

12   *Interior*, 34 F.3d 774, 779 (9th Cir. 1994).  A subpoena is unduly burdensome where it seeks to

13   compel production of documents regarding topics unrelated to or beyond the scope of litigation. *See*

14   *Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792, 813-14 (9th Cir. 2003).  "[A]n evaluation

15   of undue burden requires the court to weigh the burden to the subpoenaed party against the value of

16   the information to the serving party," and requires the court's consideration of "such factors as

17   relevance, the need of the party for the documents, the breadth of the document request, the time

18   period covered by it, the particularity with which the documents are described and the burden

19   imposed."  *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (internal citation and

20   quotation marks omitted).

21      10.  Looking towards these factors, the Court finds that HASelect has particularly

22   described the documents it seeks.  It has provided the email addresses associated with the sought

23   communications, and has provided relevant search terms that would assist in locating responsive

24   documents.

25      11.  For this reason, and in addition to the reasons stated above, the breadth of the

26   document request is not large, especially considering it seeks only communications for a two year

27   period.

28

12.     Additionally, the Court finds that HASelect has attempted to obtain these documents from other sources, but has been unsuccessful. HASelect's attempts to obtain these documents from Tecumseh, FTM, Infinity, and members associated with these entities has been thwarted by either the inability to serve these entities based on their foreign nature (i.e., FTM has no formal presence in the United States) or the fact that Infinity had deleted several emails and provided incomplete records to HASelect, thus leading HASelect to have to piece together the information from other sources – such as Three Bell. Thus, HASelect's need for these documents is great because it has been unable to obtain them from other sources.  There is no need for a party to finalize its discovery efforts from all other parties before turning to nonparties. *See, e.g.*, *Shasta Linen Supply, Inc. v. Applied Underwriters, Inc.*, 2018 U.S. Dist. LEXIS 100158, (E.D. Cal. June 13, 2018).

13.     Three Bell has claimed that its communications are highly confidential and proprietary.  However, that is not what the Subpoena requests. Moreover, Three Bell, as the party asserting privilege, has the burden of proving such privilege and its applicability hereto. *See, e.g.*, *Sanchez v. Cty. Of Sacramento Sheriff's Dep't*, 2020 U.S. Dist. LEXIS 114327 (E.D. Cal. June 29, 2020) ("It is a fundamental principal of discovery that the party asserting privilege bears the burden of proving the applicability of the privilege or protection to a given document."). Three Bell has not, and as such, cannot rely on its vague statements of privilege to avoid compliance with the narrowed Subpeona.

**B.      HASelect's Subpoena seeks relevant information.**

14.     Another factor the Court evaluates under the undue burden analysis is the relevancy of the documents sought.  Here, the documents at issue are relevant to the Adversary Proceeding and related proceedings between HASelect and Infinity and Tecumseh as shown by the emails attached to HASelect's Opposition evidencing Three Bell's involvement with Tecumseh and Infinity and specifically referring to HASelect and its collateral.

15.     HASelect has learned through discovery in the Adversary Proceeding and Infinity's chapter 7 case that, in July 2020 – at roughly the same time that Infinity wrongfully sold Tecumseh millions of dollars in accounts included in HASelect's collateral – Tecumseh, FTM, and Infinity

1    discussed a scheme to solicit Three Bell to seek a redemption of its investment in HASelect to force

2    a liquidation of HASelect that could have allowed Infinity to transfer most, if not all, of the remaining

3    collateral for HASelect's loan to Tecumseh.

4         16.    HASelect has also confirmed that Tecumseh thereafter successfully solicited Three

5    Bell to invest in Tecumseh's funding of Infinity's ongoing purchases of accounts in connection with

6    the June 18, 2020 Sub-Advisory Agreement.

7         17.    In the course of their communications with Three Bell, it is highly plausible, if not

8    likely, that Tecumseh, Infinity, and FTM made representations to Three Bell regarding the nature of

9    their business relationships and the transactions occurring under the June 18, 2020 Sub-Advisory

10   Agreement, the facts surrounding the funding and purchase of the disputed accounts by Infinity, the

11   transfer of accounts included within HASelect's collateral to Tecumseh, and the status, value, and

12   disposition of accounts in which HASelect held a perfected, first-position security interest – all of

13   which would be relevant to the claims and defenses at issue in the Adversary Proceeding.  *See* FRCP

14   26; *see also* Winet v. Arthur J. Gallagher & Co., 2020 U.S. Dist. LEXIS 205416, *2-3 (S.D. Cal.

15   Nov. 3, 2020) (citing to cases and recognizing that "information having 'any tendency' to make a

16   fact in dispute 'more or less probable' is relevant" and that "relevancy for purposes of discovery is

17   broader than relevancy for purposes of trial").

18        18.    In emails dated June 16, 2021, Three Bell confirmed to Infinity that it had been in

19   communication with Tecumseh regarding a potential deal to transfer the remaining collateral for

20   HASelect's loan to Tecumseh.  In another email dated June 27, 2021 – less than 90 days before

21   Infinity's chapter 7 bankruptcy filing – Infinity's principles provided to Three Bell an analysis of

22   the remaining accounts that served as collateral for HASelect's loan and opined that such accounts

23   were worth $10.5 to $15 million.  Just three months later, Infinity represented to the Bankruptcy

24   Court in filing its schedules that these same accounts were worth just $5.8 million.  Similarly, in

25   emails dated July 15 and 16, 2021, Three Bell and Infinity discussed a request by Three Bell that

26   Infinity provide copies of emails it purportedly exchanged with HASelect to be used by Three Bell

27   as leverage against HASelect.  Finally, emails dated September 1, 2012 confirm that Three Bell

28

representative Jon Porter spoke with Infinity's principals just two weeks before Infinity's chapter 7 case was filed.

19.    Three Bell's involvement with FTM, Tecumseh, and Infinity and attempts to gain "leverage" against HASelect, and related communications, are plainly relevant to the issues pending before the Bankruptcy Court in the Adversary Proceeding and are well within the scope of permissible third-party discovery under FRCP 26 and 45.

20.    As such, HASelect has met its burden of establishing that the information sought is relevant in accordance with discovery principals.

21.    Any conclusion of law stated herein that is more appropriately labeled a finding of fact shall carry such a designation.

**IT IS THEREFORE ORDERED** that the Motion is **DENIED** because HASelect has met its burden in showing that the Subpoena, as narrowed, seeks relevant information, the Court finds that the Subpoena is not unduly burdensome or overbroad, and Three Bell has not met its burden in establishing otherwise, especially as the party resisting discovery;

**IT IS FURTHER ORDERED** that Three Bell is not entitled to any sanctions pursuant to FRCP(d)(1) because the Subpoena, as it came before the Court, had been narrowed and HASelect's counsel has engaged in numerous reasonable steps to attempt to ensure no undue burden is imposed; and,

**IT IS FURTHER ORDERED** that Three Bell further has not shown it is entitled to any shifting of costs based on its failure to brief this issue;

**IT IS SO ORDERED**.